Wailes *v.* Cooper et al.

Edward L. Wailes, Administrator, &c., *vs.* D. M. Cooper et al.

It is an established rule, that if the title deeds under which a purchaser derives title to land, recite an incumbrance, he will be bound by the recital, and presumed to have had notice of it, whether he has read the recital or not. *Held,* that the law will not permit him to deny notice by insisting he has not read the deed.

A *bonâ fide* purchaser of land for a valuable consideration without notice, is one who is the purchaser of the legal title or estate, and a purchaser of a mere equitable estate is not embraced in the definition.

Where the legal estate is outstanding, equitable rights or incumbrances must be upheld or discharged according to their priority in time.

If the titles of contending parties are purely equitable, and the equities in other respects are equal, precedency in time, or priority of right will, under such circumstances, give the advantage.

The words used in our statute of "purchasers for a valuable consideration without notice," were intended by the legislature to designate that class of persons who had been declared to be such by the judicial tribunals.

Under the rule of law, the mortgage of W., B. & Co. must prevail against the right or title acquired by J., because the right has precedence in time.

This court has heretofore decided, that where a covenant for the sale of real estate has been executed, and the vendee has received a deed with covenants of warranty, and taken possession of the land, he cannot, in a case free from fraud or misrepresentation, avoid a judgment for the purchase money, on account of a defect or failure of title, unless he has been evicted.

*Aliter,* if there has been fraud or misrepresentation in relation to the validity of the title or incumbrances on it.

A court of law or equity, if the title be defective or incumbered, will relieve from the payment of the purchase money without eviction, even if the purchaser has received a deed with covenants of general warranty, and gone into possession of the land.

Where a vendee of land at the time of his purchase, knew of defects in the title, or the existence of incumbrances on the estate, and took a deed with covenants of warranty, he cannot at law avoid a recovery of the purchase-money, even after eviction, but must rely upon the covenants; nor will a court of chancery in such case give relief.

If the judgment in this case had been rendered in favor of H., the original vendor, or his legal representatives, a court of equity would grant relief to the extent of the incumbrance on the land, because of the insolvency of H.; the remedy by the covenants in the deed thereby becoming entirely worthless.

The appellant represents S., who received the notes sued on in due course of trade, for a valuable consideration, without notice; and he has an equity of equal dignity, at least, with C. and J.; and in such case, the rule in chancery

is invariable and certain. *Held,* that the legal right will always prevail, and in this case C. and J. have not a claim in equity to be relieved.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

This case is composed of three suits, which were consolidated and tried together in the superior court of chancery. The two first are bills filed to foreclose mortgages made by W. Haile. The last is a bill in the nature of a bill of interpleader.

The facts are briefly these: W. Haile purchased a tract of land from John Thorn on 2d January, 1835. On that day he executed a deed for the land, in which his wife joined, on the face of which deed is the following statement: "reserving herein a mortgage or lien on said land, until the purchase money is fully satisfied and paid, all the terms of which are fully explained and set forth in a mortgage of even date herewith, made by the said Haile to the present grantor of this tract of land and forty-one negroes to secure the same," &c.

Thorn died about April or May, 1836. On the 1st August, 1836, Haile sold the land, and made a deed to Johnston. The consideration of this sale was two notes, of $20,000 each, made by Douglass H. Cooper, and indorsed by Johnston. The proof shows Cooper was under age. Johnston was his guardian. Cooper wished to purchase the land, but being under age, Johnston agreed to indorse the notes, and take the title to himself to indemnify himself against the indorsement; and when Cooper paid the notes on which he was indorser, then he agreed to convey the land to him. Haile before he sold to Johnston, made a mortgage to Watt, Burke, & Company, dated 12th July, 1836. This mortgage was filed for record, August 20, 1836, but not at the time of the sale of the land to Johnston recorded. The notes made by Cooper and Johnston for the land, fell due the 1st January, 1838, and 1st January, 1839, and were dated 1st August, 1836. These notes were sold and delivered by Haile to Peter Smith, in payment of a large estate purchased by Haile of him a few months after they were executed. Johnston denies any notice of the mortgage to W., B. & Co., and Cooper, who was a minor at the time of the sale, knew it, but did not believe it.

Smith knew nothing of the facts, and was an innocent purchaser, without notice. Smith died in the spring of 1837. His executor brought suit on the last note, (the first having been paid at maturity,) and obtained judgment in 1840.

Cooper and Johnston say they are liable to pay the note, but insist that they knew not whether to pay it to Thorn, and Watt, Burke & Company, or to Smith's estate. Smith's administrator claims, that he is entitled to be paid the note, whether the mortgages are valid or not. Thorn's administrator, and Watt, Burke & Company claim to sell the land to pay their debts, whether Smith is entitled to recover on his note or not. There is, therefore, to be a heavy loss on one of the parties; and the question is, on whom has the law placed it? The court below decreed in favor of defendants in error, and plaintiffs prayed this appeal.

*Montgomery & Boyd*, for appellants.

It is objected in behalf of Cooper, that he is not chargeable with notice. 1st. Because he was a minor, incapable of contracting, and consequently incapable of binding himself, or being bound by any circumstance which would be binding on an adult. 2d. That the notice was not sufficient to charge him as to either mortgage.

As to the first point, it will be seen by the pleadings and proof, that Cooper is an adult, and has possession of the land under the purchase from Haile. If he could not bind himself, his continued possession, and payment of one half of the purchase money, are such acts of ratification as would bind him now. And the true ground on which a court of equity will hold a subsequent purchaser liable on notice of prior incumbrances, is that it is a fraud on a prior incumbrance to attempt to cut in and squeeze out his lien, by purchase or otherwise; and an infant cannot gain an advantage by fraud any more than an adult. 3 Merivale, R. 221. But Cooper does not plead his infancy, nor claim any advantage therefrom.

As to the second point, it is insisted that the notice to Cooper was not such as will bind him, because he had assurance that the mortgage to Thorn " was no incumbrance;" that Haile informed him that, when the deed was made, Mrs. Thorn

Wailes *v.* Cooper et al.

refused to sign it until the purchase money was secured, which had been done, — which statement he believed; that as to Haile's statement about Watts's mortgage, he did not believe it, because he had been apprized that Haile wanted to get out of the contract, and he regarded that as a stratagem to drive him from his bargain. Now it is certainly no answer to a charge of notice, that although you had notice, you did not believe it. All we can be expected to show is, that the incumbrance existed, and the party sought to be charged had such information on the subject as was sufficient to set him on inquiry. The reputed holder of this mortgage did not reside more than thirty-seven miles from the place where the contract was made, and an ordinarily prudent person would have consulted them before taking it for granted that his informant was stating a falsehood.

As to the mortgage in favor of Thorn, it will be seen that the deed from Thorn and wife to Haile recites the mortgage fully; and Cooper admits he read it, on the day he received a deed and gave his notes, and two or three months before the notes were transferred by Haile. All of which time he lay still, without even inquiring into the matter.

It is well settled, that if the title deed, under which the purchaser derives title, recite an incumbrance, he is bound by it, and will not be allowed to deny that he has read it. 15 John. R. 555; 3 Murphy, 591; 2 C. C. E. 326; 2 Scho. & Lef. 315, (327); 1 Chan. Cases, 260, 291; 2 Ib. 326; 11 S. & M. 552, 553; 2 Powell on Mort. 561, 562; 2 Anstru. 438; 10 J. R. 374; 1 J. C. R. 299; 1 Sim. & Stu. 380; 1 Dallas, R. 67; Sugden on Vend. 544, 545; S. & M. C. R. 45, 112.

The registry acts are intended to prevent frauds on purchasers, by secret liens, trusts, or contracts and conveyances; but if a purchaser have actual or implied notice of the existence of any such incumbrance or title, he is guilty of a fraud in attempting to defeat it by purchasing and procuring his title to be first recorded. 2 J. C. R. 190, 603; 10 J. R. 461; 1 Scho. & Lef. 99, 100; 1 Strange, 664; 2 Powell on Mort. 622, 624; Ib. 625, notes 1 and 2; 2 Equity Ca. Abrid. 63.

The registry act of this State is free from difficulty on the

subject of the effect of notice. By it, notice renders an unregistered mortgage, &c., as valid against a subsequent purchaser, as if it had been recorded. Rev. Code, 453, §. 3; How. & Hutch. 343.

As to what is a sufficient recital in a deed to constitute notice, in addition to the authorities above referred to, see 2 Powell on Mort. 631, note; 2 J. C. R. 182.

It is very clear that notice of an incumbrance, before receiving a deed, is sufficient to defeat a subsequent purchaser, who has paid the purchase money; and it is equally clear, if not more so, that when the purchase money remains unpaid, or enough to cover the amount of incumbrances, as is the case in this instance, notice is sufficient any time before payment is made. 3 P. Wms. 307; 2 Atkyns, R. 397, 630; 3 Ib. 304; 2 Pow. on Mort, 536, note *g*; 537, note *h*; 2 Paige's R. 300.

The answer of Smith sets up that the mortgage in favor of Watt, Burke & Company has been paid, but no proof to that effect has been filed. On the contrary, Mr. Ernest's deposition shows the true state of the accounts, and that Haile owed a balance on separate account.

It is denied that the mortgage from Haile to Thorn was delivered, but is held as an escrow.

It is true the deed of mortgage was to be executed by Mrs. Haile. But we think it was no escrow as to Haile. The evidence that Haile considered it delivered as far as he was concerned, is very full and conclusive. In his letter, which is attached to Wren's deposition, he treats it as a mortgage. He expressly told Mrs. Thorn, when he called to get the deed from her, that he had given Dr. Thorn a mortgage, as is proved by Mrs. Inge and North; and his acceptance of the deed, containing a recital to that effect, is conclusive on him; and if the mortgage bound him, those claiming under him cannot object. 6 Mod. R. 217; 7 Petersdorf's Abrid. 662; 2 Mass. R. 447 (452); 9 Ib. 307 (309); 14 S. & R. 299; 13 J. R. 285; Co. Lit. 360; 4 Greenleaf's Maine R. 20, 244; 5 Ib. 336 (338); 6 Sim. 31 (9 Eng. Chan. R. 155); 1 Equity Dig. by Bar. & Har. 396.

Haile's conduct, when he received the deed from Mrs. Thorn,

amounted to a delivery of the mortgage. His consent is implied, and his consent alone was necessary; and two of the subscribing witnesses swear that Haile did, in their presence, sign, seal, and deliver the mortgage. All of which is considered conclusive as to the delivery of the deed. Wren was a subscribing witness, but it may have been delivered without his knowledge.

· If the court should, however, be of opinion the mortgage from Haile to Thorn was but an escrow, still we insist the mere recital in the deed from Thorn and wife to Haile is an equitable mortgage, of which the purchaser had notice, and by which Johnston is as much bound as Cooper, as is fully shown by the authorities before cited. This being a controversy as to who shall have the fund secured by Cooper's note indorsed by Johnston, and not a bill to foreclose a mortgage, the parties have the right to claim the same under any equitable claim set up in their pleading. Wailes does set up this equitable mortgage. It is of itself a reservation of lien for the purchase-money, and so reserved that subsequent purchasers cannot be allowed to deny notice.

In this case Johnston cannot be affected; for if the money is decreed to Watt, Burke & Co., and Wailes, Smith's executor will be enjoined from collecting it, and he, therefore, stands in the light of a stake-holder.

· As to Smith's claim on this fund, but one remark is necessary. If Cooper's land is subject to these mortgages, or either of them, it was so at the time of his purchase, and it constituted a failure of consideration to that extent at the time of sale. As the assignment to Smith was sixty or ninety days subsequent thereto, he took it subject to all the equities in favor of Cooper.

The point taken in argument does not arise in the case, to wit, that the mortgagee has a lien on forty slaves, to which he can resort, and he must resort to that fund first. Now the fact that the negroes are included in the mortgage is no evidence that Haile was the owner of them. And if Smith intended to rely on that equity, he should have set it up in his answer, that we might have had an opportunity of showing the title, or have had the benefit of our lien on them. The proceedings in

the case of *Wailes* v. *D. H. Cooper et als.*, show that Haile had no title to these negroes, which proves the wisdom of the rule, that parties must give full notice of their claims in their pleadings. As this point is not raised by the pleadings, it should not be noticed by the court. Or, if noticed, it should be taken in connection with the pleadings in the other cases. The heirs of Haile and Mrs. Nancy Haile, in their answer, show fully that the title to these slaves was conveyed in trust to P. H. Joor for the use of Mrs. Haile and her children, before the date of the mortgage.

*Geo. S. Yerger*, on the same side.

1. I contend that, whether Thorn's estate and Watt, Burke & Co. can foreclose and sell the land or not, still Smith's estate is entitled to enforce the judgment. Smith is an assignee for value of the note. He had no notice of any equity, and, so far as regards the note assigned to him, Cooper and Johnston must pay it, whether the land is subject or not to the mortgage debt.

They either had notice or not; if they had notice, or if Cooper, the maker, had notice, and the deed to Johnston contained a general warranty, Cooper could not defend on the failure of consideration, or want of consideration, before eviction, even against Haile. 9 S. & M. 544; *Heath* v. *Newman*, 11 Ib. 201; *Dennis* v. *Heath*, Ib. 206; *Johnson* v. *Jones*, 13 Ib. 580.

But in such case, where the note is in the hands of an innocent assignee, it is manifest they cannot defend. *Green* v. *McDonald*, 13 S. & M. 445; *Wiggins* v. *McGimpsey*, 13 Ib. 532; *Stone* v. *Buckner*, 12 Ib. 73.

2. Again, our anti-commercial statute does not apply to a case of this kind; it lets in equities which the maker has against the payee. The maker sets up an equity, not against the payee, for that is Johnston, but against a subsequent indorsee. Each indorsement, although for accommodation, is a distinct and independent contract. It is different from an ordinary surety on the face of the note; the promise of the indorser is to pay to any who may advance money or property on the faith of the indorsement.

The case is left like that of a note payable to bearer, as it

was at common law. A note payable to bearer, is a promise to pay to any one who advances money on it. So, where an indorsement is in blank, the indorser promises to pay any one the amount who advances money on it, if the maker on demand does not. *Maury* v. *Jeffers,* 4 S. & M. 87; *Dunn* v. *Smith,* 12 Ib. 602; and cases cited on the other side; *Bullet* v. *Thatcher,* 5 How. 695; Bailey on Bills, 104; 6 Wend. 510.

Our statute alters the commercial law only in cases of equities against the payee, and indorsements by him. It applies to notes where sureties are on the face; where payor or either have an equity. It does not apply to indorsed notes. Here the payee is not Haile, it is Cooper. Each indorsement is presumed a distinct and independent contract. Value is presumed to attach between every indorser; if it is an accommodation indorsement it must be proved that assignee knew it.

Every assignee takes it with right against each indorser. It is presumed each indorser pays value. Smith took this on the faith, not only of Cooper, but the indorsers, Johnston and Mayes. He had no notice.

Suppose an indorsement in blank is filled up against contract, will the holder for value be affected by it? It is not in our statute. Suppose Johnston had indorsed this in blank, and given it to Cooper to use, and Cooper bought the land, and filled it up, and then sold it to Smith.

Suppose again, the note of A. is given by B., who owes it to C., who buys land and indorses it to D., who sells it to E. for value. Can failure of title be a defence in E.'s hands? See *Fanning* v. *Merchants Bank,* 8 S. & M. 139; *Goad* v. *Hart,* Ib. 787; *Torrey* v. *Fisk,* 10 Ib. 590; 11 Ib. 140.

What is a blank contract of indorsement? A blank indorsement is a promise to pay the holder for value if the maker does not. Suppose it had been written out on a separate sheet of paper, and money advanced on it, could not a holder for value recover? Bailey on Bills, 104.

3. But the question is, as to Johnston, is he not a *bonâ fide* purchaser without notice of either mortgage; notice to Cooper cannot affect him. Johnston, on the faith of the title being conveyed to him to secure his indorsement, took it to himself.

1st. It is clear he had no actual notice, at the time of the conveyance, of either mortgage. 2d. It is clear he had no constructive notice by recording, for neither were recorded. But Judge Montgomery says he had notice, because Thorn's deed to Haile recites a mortgage or lien was retained and set forth in a mortgage of even date. That mortgage, on examination, was found not to be recorded. The recital, or reference to it, on the deed, did not specify particularly the amount, or time, or terms. There was nothing to show whether it was satisfied or not; there was, then, simply enough shown to put him on inquiry. But is this sufficient to break in on the registry act? By no means; it must amount to fraud. 2 Johns. Ch. R. 189; 8 Cowen, 264. No mortgage could be reserved in the deed, it manifestly refers to the mortgage executed; he only had notice of a mortgage executed sixteen months before. He looks to the register; it is not there; must he go further and inquire? No. See 18 Johns. Rep.

4. But it is said, suppose this is so, still he had notice before he had the money; he has not yet paid it, and therefore he is chargeable.

As a general rule, this is true; but it only applies to cases where, at the time he receives notice, he owes the money to his vendor. He is chargeable because he can retain the money, and apply it to the extinction of the incumbrance; it proceeds upon the ground that it is trust money in his hands, which may be followed. 2 Story's Eq. § 1232. But when, before he has notice, he does not owe the money to the vendor; when it was previously assigned to another, at a time when he had no offset or failure of consideration; here it is not trust money in his hands, the money belongs to another, who can recover it from him. 3 Leigh, R. 607. As an instance, a man purchases without any notice whatever, and gives his bill or note one year after date, it is assigned before due; by the common law no defence is let in; he must pay. After assignment of the note, he is notified of an equity; must he pay his note? Surely. And yet he must not be protected.

Under our statute, the note being assigned before he had notice of the Thorn mortgage, he was bound to pay it; it was Smith's, not Haile's money. Notice afterwards could not affect

him. There is no evidence that he knew of the mortgage before assignment to Smith.

5. But it is said, Watt, Burke & Co. had their mortgage recorded twenty days after the sale, and this recording was before transfer to Smith; that he had therefore notice of this. Recording a mortgage is constructive notice to a purchaser who actually purchases after it is recorded. To be affected by this notice he must be a subsequent purchaser; in this case, he purchased before. The recording is not notice to him, before he pays the money; *actual* notice is required of this. 5 Rawle, 57. As to assignee of a mortgage, see 8 Cow. 264.

*Quitman & McMurran,* for appellants.

I insist that Johnston was the sole purchaser of the land from Haile, and succeeded to all the legal intents, however well it may have been understood at the time that the purchase was designed for Cooper. Johnston, too, took the title to himself, and he holds that title, and agreed with Cooper only to convey to him on the payment of the purchase-money. Johnston holds the title as his security; and how can his security be sacrificed to these pretended mortgages, where he had no notice of their existence when he purchased, or until the suits were instituted for their foreclosure?

The mortgages were unregistered at the time of Johnston's purchase of Haile, and the Thorn mortgage was neither acknowledged nor recorded till more than two years afterwards, when both Thorn and Haile were dead. Now if these instruments had validity as between the parties to them, the notice, even to Cooper, if he had been an adult at the time, and the real purchaser, would not bind him; it was not sufficient. To avail any thing, the notice must be clear and explicit as to the nature and extent of the claim, and attended with such circumstances as to amount to fraud on the part of the subsequent purchaser. The authorities speak a uniform language on this subject. 2 Johns. Ch. R. 190; 8 Ib. 137; 18 Ib. 11; 2 M'Cord, R. 273; 1 Ib. 265.

But the Thorn mortgage was never delivered; the testimony of Dr. Wren is conclusive on this point; the certificate of

acknowledgment is no proof as to third parties, where the question of the actual delivery arises. The certificate, too, cannot be true, for it is contrary to all the proof in the cause that bears on this point, in addition to the testimony of Dr. Wren.

But suppose the court should consider these mortgages as taking effect from the time of notice, still it could avail nothing as to Smith. He had no notice till the bill of interpleader was filed; Johnson had no notice until the suit on the mortgages was filed, nor Cooper either, certainly not until after he came of age, and that was after Smith became the *bonâ fide* holder of the notes for a valuable consideration.

In this view of the case, Smith's equity is paramount to any that Wailes or Watt, Burke & Co. can have to the purchase-money due by Cooper and Johnston. Smith used all diligence; he is the assignee, the legal holder of Cooper and Johnston's note, has a judgment on it at law; and what equity can these pretended mortgagees have to this fund? Smith took the paper subject to all the equities between the original parties to it; that is between Haile, Cooper, and Johnston, under our statute, but not subject to any latent equities that a third person may have had, either to the notes or to the land, for which Johnston and Cooper gave their notes. Why, if Peter Smith had purchased the land from Johnston for a valuable consideration, instead of negotiating for the notes, and with the same want of notice, these mortgagees would have no ground for any claim on the land against Peter Smith's heirs. They have less claim, if possible, on the debt due to Smith by Johnston and Cooper. They must bear the consequences of their own laches. On this point I deem it unnecessary to cite many authorities; the two following ones, I conceive to be directly in point, and submit them for the consideration of the court. *Moore* v. *Holcombe*, 3 Leigh's Rep. 597, 605; *Murray* v. *Lylburn*, 2 Johns. Ch. R. 442; *Jackson* v. *Van Valkenburg*, 8 Cowen's Rep. 260–263; *Jackson* v. *Given*, 8 Johns. Rep. 137.

As to the alleged deficiency in the quantity of land, we do not think that the proofs make out a case for the interposition of this court to abate any of Smith's judgment.

*J. Winchester*, for appellee Cooper.

The incumbrancers in these cases can only claim a decree for the payment of the incumbrance by the purchaser out of the debt he owes the vendor, but upon the ground of its being the same debt arising out of privity of contract, on account of privity of title to the land, which is the subject matter of both contracts. Even, too, where the mortgage is recorded before the purchase, an ordinary bill of foreclosure is filed against the purchaser, not the vendor; and the decree is, that the purchaser pay the incumbrance by a certain day, or that the land be sold to pay the incumbrance; and if the purchaser pays it, or the land be sold to pay it, it is a good defence in equity to the right of the vendor to the debt so paid by the purchaser. If the purchaser had previously paid to the vendor the whole purchase-money, he can recover it back; and if he has not paid it, equity will enjoin the vendor from collecting it. Upon what principle is a decree of foreclosure against a purchaser to pay the incumbrance, or that his land shall be sold to pay it, but upon the privity of title and contract? and upon what principle is a payment by the purchaser to the incumbrancer a discharge of the vendor's debt, but the privity of contract arising from the privity of title?

Upon the payment of the debt to the incumbrancer, the purchaser, in equity, is protected from paying it to the vendor; in other words, the same sum of money is due either to the incumbrancer or to the vendor. And if he is compelled in equity to pay it to the incumbrancer, equity discharges him from paying it to the vendor or his assignee. If he is not bound to pay it in equity to the incumbrancer, then the court of equity will not interfere with it as a mere personal contract, which may be enforced at law. *Stewart* v. *Ives*, 1 S. & M. 197.

But suppose, that in equity it is not, any more than at law, one and the same debt to both the incumbrancer and vendor, arising out of privity of contract, considered as a real contract running with the land, on account of the privity of title to the land, which is the subject of the contract; yet the court of chancery, by its general jurisdicton, has unquestionable cognizance to entertain the bill for the relief sought upon the state-

ments and charges made. The complainants seek, by their bill, to have their land discharged from the incumbrance, if it does not bind the same; and if it does bind the land, then that the assignee of the vendor shall be enjoined from collecting from him the purchase-money, to the extent the land is subjected to the incumbrance. Chancery has jurisdiction of the question, whether the land is or is not subject to the incumbrance; and can decree as between the purchaser and incumbrancer accordingly. It has also jurisdiction of the question, whether the vendor shall be enjoined from collecting the purchase-money, on account of such incumbrance. *Abbot* v. *Allen*, 2 J. C. R. 519; *Tourville* v. *Naish*, 3 Peere Wms. 307; *Johnson* v. *Gere*, 2 J. C. R. 546; *Green* v. *McDonald*, 13 S. & M. 454; *Moss* v. *Davidson*, 1 Ib. 112; *Ayres* v. *Mitchell*, 3 Ib. 683. And under our statute, this court has decided that the purchaser has the same relief in equity against the assignee of the vendor. *Stockton* v. *Cook*, 3 Munf. 68; *Kilpatrick* v. *Dye's Heirs*, 4 S. & M. 292; *Parham* v. *Randolph*, 4 How. R. 435; *Barringer* v. *Nesbit*, 1 S. & M. 22; *Wade* v. *Hoggatt*, 10 Ib. 143; *Gilpin* v. *Smith*, 11 Ib. 109. Both of these questions, then, (of which the court of chancery has full jurisdiction,) depend upon whether, as against the assignee of the vendor, the land in the possession of the purchaser is or is not subject to the incumbrance. If it is subject to the incumbrance, then equity will decree that the assignee of the vendor shall be perpetually enjoined. If it is not subject to the incumbrance, then the decree of the court will remove the cloud upon the title of the purchaser.

The assignee of the vendor and the incumbrancer are, therefore, directly and materially interested in the only question in controversy, to wit, incumbrance or no incumbrance.

The bill, therefore, calls upon them to interplead, and try the question of incumbrance or no incumbrance, upon which their rights depend to the money. The purchaser owes for the purchase-money; and on the trial of the question, the purchaser is a competent witness for either party, because, if his evidence establishes the incumbrance, he has to pay off the incumbrance, and will be protected, by an injunction, from paying the vendor; if his evidence discharges the incumbrance, he still has to pay the money to the vendor.

The defendants are proper parties, as defendants for their respective rights centre in one common point of controversy, namely, incumbrance or no incumbrance.

It is not a question, whether the court of chancery has jurisdiction, but simply, whether the jurisdiction may be exercised in one suit, in which the only matter in controversy is, by the interpleading, tried directly between the incumbrancer and vendor; or whether it can only be exercised by two suits, one by the incumbrancer against the purchaser to enforce the incumbrance, and the other by the purchaser against the vendor or his assignee to enjoin payment of the purchase-money, on account of the incumbrance.

A bill in the nature of a bill of interpleader, is clearly the most proper mode of exercising the jurisdiction, and is supported by authorities. *Parks* v. *Jackson*, 11 Wend. R. 442; *Thomson* v. *Ebbets*, Hopk. Ch. R. 272.

Complainants also seek an abatement of the price for the land, because there is a total failure of title to part of the land, which, at the time of the conveyance from Haile to Johnston, was held adversely by a person in possession under an older title, and to which, therefore, no title passed from Haile to Johnson. The same defence, too, by privity of contract, lies against the principal incumbrancer, who conveyed to Haile with warranty, and which warranty passed to Johnston by the deed from Haile.

*H. F. Simrall,* for Johnston, appellee.

Incumbrancers are actually asserting their titles in this case, which, if good, necessarily defeat the title of the purchaser. *Stockton* v. *Cook,* 3 Mumf. 68. In this view of the case, then, if the mortgages are sustained, Johnston's legal title has failed, his vendor is insolvent, the consideration of the note has failed, and he is entitled to have his note for the purchase-money now in judgment perpetually enjoined.

But for Johnson's representative and Droizees, I maintain the mortgage from Haile to Thorn never was delivered. The only evidence of delivery at all is the *ex parte* affidavit of the subscribing witnesses, made in 1838, before the clerk. Wren, who is one of them, and before whom Haile made acknow-

ledgment, swears positively that it never was delivered to Thorn, but that it was left with him by Haile to get the acknowledgment of Haile's wife; and that, two years after Thorn's death, he found it among his waste papers, handed it over to one King, Mrs. Thorn's father, and that, too, after Mr. Thorn's death. The subscribing witnesses who made affidavit saw nothing more than that "Haile signed and sealed." A delivery could not be made after Thorn's death.

The two cases, to wit, *Baldwin* v. *Maultsby*, 5 Ired. N. C. R. 510, 511, 512, and *Moore* v. *Collins*, 4 Dev. R. 387, clearly show that there was no sufficient proof of delivery; in one of these cases, the grantor requested subscribing witness to attest, and at the time told him that that was his act and deed; yet, dying before the deed was actually delivered over to grantee, or some person for him, it was held there was no delivery, and, therefore, no deed.

But if there were any delivery good in law, it was when handed by Wren to King in 1838, at which time alone it was valid as an incumbrance, and this was long after Johnston's purchase from Haile.

But if delivered at or about its date, Johnston had no notice of it. He never saw the deed of Thorn and wife to Haile, reciting that a mortgage was given to secure the purchase-money; and if he had read it, such recital is no evidence of the existence of the mortgage, or of its contents. 2 Johns. Ch. R. 189; 18 Johns. R. 11.

The principle is, that, to take a case out of the registry act, constructive or implied notice is not sufficient; it must be such notice as will amount to a "fraud" upon the holder of the unregistered deed. *Wyatt* v. *Barwell*, 19 Ves. 435; *Jackson* v. *Given*, 8 Johns. 137; 8 Cowen, 264.

That the proof of notice made against Cooper does not come within the principle as above stated, is shown also by the cases of *Farnsworth* v. *Childs*, 4 Mass. R. 638; 3 Pick. 154.

But I insist, also, that whatever was said to Cooper, affecting him with notice, does not bind Johnston. Johnston was in fact the purchaser. The deed was void as to him; and to defeat his deed, notice of these incumbrances must be brought home to

Wailes *v.* Cooper et al.

him. At the date of the purchase, Cooper was a minor. It is true that Johnston agreed with Cooper, that if Cooper, or when Cooper paid these notes, Johnston, would make him a deed, and the title was reserved to Johnston until then; to charge Johnston with the consequences of notice to Cooper, would be to charge a purchaser with notice to a sub-vendee, with whom he had agreed to convey upon a contingency, and which contingency might never happen; it would be to destroy the very security which Johnston had reserved to himself, in the event that Cooper should not pay the notes, either from insolvency or unwillingness. Johnston is not a mere naked trustee, holding the legal title, but a purchaser with an outstanding obligation for the purchase-money, and an agreement with his minor and ward that, when he pays the purchase-money, she shall have a deed. If Cooper should never choose to pay the money, "from insolvency or other reason," he never would be entitled to the deed; and yet notice to him shall have the effect to defeat Johnston's title.

If the court should hold that there was a sufficient delivery of the mortgage to Thorn, and no sufficient notice of either mortgage, except by their registration, which was long after Johnston's purchase, then they would only be binding as against Johnston, the purchaser, and Cooper, from that date; and that, too, only to the extent of the unpaid purchase-money. All the authorities are clear on this point; and chancery will enjoin and prevent the collection of the purchase-money. *Tourville* v. *Naish*, 3 P. Wms. 307; *Frost* v. *Beekman*, 1 Johns. Ch. 298. Unless, indeed, Smith's representative can, as assignee of the note, show a superior equity; and that is a matter for these parties to litigate between themselves, and have settled by the court, for it is clear that Johnston and Cooper are not bound to pay both. The best consideration which I have been enabled to give this case conducts me to one of two conclusions.

First. That if both mortgages were duly executed at their date, and the purchaser from Haile, although he was buying in good faith, and made research after liens, or procured it to be done and found none, yet is chargeable with constructive notice of the mortgages, the consideration of the note has

failed to the extent of the note; and Haile's covenants, affording no protection, Johnston and Cooper are entitled to injunction and relief as against the judgment in favor of Smith's representative.

Second. That if Johnston and Cooper are chargeable with notice received after the purchase, by registration of the mortgages, or other sufficient notice; that then these mortgages are no further binding upon the land, against the purchaser, than the unpaid purchase-money; and, in that event, Johnston and Cooper are relieved from responsibility to Smith's representative, unless Smith's representative shows, as against the mortgagees, the superior equity; in which latter case the mortgages will take nothing.

Mr. Justice YERGER delivered the opinion of the court.

The appellant filed his bill in the superior court of chancery, as administrator *de bonis non* of John Thorn, deceased, alleging that, on the 2d day of January, 1835, John Thorn and wife sold to William Haile, now deceased, a tract of land in Wilkinson county for about $18,000, for which Haile executed his three promissory notes, payable in three annual instalments; and on the same day, to secure the payment of the notes, Haile executed a mortgage on the same land and a number of slaves. That this mortgage was duly proven, and certified and filed for record on the 26th day of February, 1838, and that the two last notes secured by the mortgage are still due and unpaid. The bill also states that, after the execution of this mortgage, and before it was filed for record, Haile conveyed the land to Joseph Johnston, to and for the use of Douglass H. Cooper. But that Haile, or some one else, informed Cooper, at the time the deed was executed, of the existence of the mortgage from Haile to Thorn; and that Cooper was duly notified, before the payment of the purchase-money by him for the land, of the existence of the mortgage, and the balance due. Haile is dead, having left a widow and three children; and Peter Joor has administered on his estate. To this bill, Cooper answered, and stated that, on the 1st of August, 1836, being then under the age of twenty-one years, he made his two

Wailes *v.* Cooper et al.

promissory notes for the sums of $20,000 each, payable to Joseph Johnston on the 1st days of January, 1838 and 1839 respectively, which notes were indorsed by Johnston and W. T. Mayes, and delivered to Haile, in consideration of the sale and conveyance of the land named in the bill to Joseph Johnston, which deed was filed for record on the 1st of August, 1836; but denies that the deed is to and for the use of Cooper. He states that, on the day the deed was executed and filed for record, Johnston made an agreement to convey the land to him by a quitclaim deed as soon as Cooper paid the two notes. He denies that he or Johnston (as he is informed and believes) had any notice of the mortgage before the execution of Haile's deed to Johnston, and states that Johnston employed an attorney to examine the records before the execution of the deed, which attorney reported that there were no incumbrances of record on the land. He denies the delivery of the mortgage by Haile to Thorn, and states that only half of the land belonged to Thorn, and that the balance belonged to Mrs. Thorn, who declined to join in the sale and conveyance by deed till the mortgage, which embraced certain slaves, the property of Mrs. Haile, should be executed by her, which was never done; and states that Mrs. Thorn did not join in the sale or execute the deed till about two years after the death of Thorn, about which time Haile paid the first note named in the mortgage. Cooper also states, that he, Cooper, on the day the deed of Haile was delivered to Johnston, observed in the deed from Thorn to Haile a reference to a mortgage made by Haile on the land for the purchase-money due to Thorn; and, upon alluding to that fact, Haile stated that he had arranged the purchase-money with Thorn; that the mortgage was satisfied, and had in reality never been delivered, and that Thorn's wife refused to execute a deed for the land till the purchase-money was paid or arranged; and he then showed by the deed that she had executed it. Cooper states that he has paid the first note made to Haile, both of which notes had been transferred by Haile to Peter Smith, and that the second is unpaid.

Mrs. Haile answers, and claims the slaves named in the mortgage as her separate property.

Johnston answers substantially as Cooper. He states, that the land, when purchased, was intended for Cooper, who was then a minor; and that he took the deed in his own name as a security for his liability on the notes as indorser. Denies notice of the mortgage from Haile to Thorn, which mortgage he avers was never delivered to Thorn. The purchase was made by him for Cooper, who was a minor, and of whose estate Johnston was guardian.

Watt, Burke & Co. also filed a bill to foreclose a mortgage made by Haile to them on this land, which mortgage was executed on the 12th of July, 1836, and filed for record on the 20th of August, 1836, twenty days after the sale to Johnston. Watt, Burke & Co. charge that notice of their mortgage was received by Johnston and Cooper before they completed the purchase of the land from Haile. Johnston denies this notice. Cooper says that, after the arrangement made by him to purchase from Haile, he heard that Haile had a larger offer for the land, and that to induce Cooper to decline completing the purchase, he would suggest objections to the title; admits that, before the conveyance to Johnston, Haile informed him that Watt, Burke & Co. had a mortgage on the land for $5,000; but he stated, at the same time, that he had a letter from Watt, Burke & Co., informing him that he could arrange that amount with them.

Cooper filed a bill in the nature of a bill of interpleader, setting out substantially the same facts as stated in his answer to the bill of Wailes. He avers the insolvency of Haile's estate, and states that he has paid one of the notes given by him to Haile; and that, on the other, the executor of Peter Smith, to whom Haile transferred it, has sued and obtained judgment against himself, Johnston, and Mayes, which judgment he is proceeding to collect. He avers a willingness to pay the amount of the judgment, but insists that, if he has it to pay to the estate of Smith, he should hold the land discharged of the mortgages in favor of Thorn, and Watt, Burke & Co.; and if the land is subjected to their mortgages, he should have a perpetual injunction against the judgment in favor of Smith's executor. Smith's executor, Wailes, and Watt, Burke & Co.

are made parties defendants to this bill. The answers of Watt, Burke & Co., and of Wailes, insist upon the validity of their respective mortgages, and that they are liens on the land. The answer of the executor of Smith states, that Peter Smith, the testator, received the two notes from Haile, before the maturity of either of them, in payment of a tract of land and slaves sold by him to Haile; that he had no notice, at the time he received the notes from Haile, of any defence by reason of failure of consideration or otherwise, that any of the parties could claim to the notes; that Cooper paid one of the notes, and promised to pay the other. He insists that, whether the land is subjected to the mortgage or not, he has a right to collect the amount of the judgment against the defendants thereto. These several bills were all submitted in the chancery court at one time, as constituting in fact but one suit; and the chancellor decreed against the right of Wailes, and Watt, Burke & Co., to subject the land to the payment of their mortgages. He also decreed that the parties to the judgment in favor of Smith's executor should pay the amount thereof to the executor, Wailes; and Watt, Burke & Co. have appealed from that decree.

The record presents two questions for our consideration.

1st. Is the land subject to the mortgages in favor of Watt, Burke & Co. and of Thorn. 2d. If so, can Cooper and Johnston, on that account, set up a failure of consideration to the extent of those incumbrances, against the enforcement of the judgment in favor of Smith's executor.

The first question depends on the validity of the mortgages, and the notice of their existence received by Cooper and Johnston before the purchase. As to the validity of the mortgage in favor of Watt, Burke & Co., there seems to be no dispute. It is said, that there is not sufficient proof of delivery in relation to the mortgage to Thorn. But, upon looking at the proof in the record, we think it clearly establishes a delivery; and that this objection is not, therefore, tenable. Did Cooper and Johnston have notice of those mortgages before they concluded the trade with Haile? On the face of the deed made by Thorn to Haile will be found the following recital and reference to that

mortgage : " Reserving herein a mortgage or lien on said land until the purchase-money for the same is fully satisfied and paid, all the terms of which are fully explained and set forth in a mortgage of even date herewith, made by the said Haile to the present grantor, of this tract of land and forty-one negroes, to secure the same." It is insisted that this recital and reference to the mortgage was sufficient notice to both Cooper and Johnston of its existence and of its contents. In this we fully concur with counsel. The rule seems to be well established; and it is in consonance with reason, that if the title-deeds under which a purchaser derives title, recite an incumbrance, he will be bound by that recital, and presumed to have had notice of it, whether he has read it or not. For the law will not permit him to deny notice by insisting that he had not read the deed. 2 Powell on Mort. 561.; Sugden on Vend. 544; 15 Johns. R. 555. We regard, then, the proof of notice in relation to the mortgage in favor of Thorn, as complete.

As to the mortgage of Watt, Burke & Co., Cooper states distinctly the notice to himself given by Haile, the vendor. It is true he alleges that Haile informed him he had a letter from Watt, Burke & Co., agreeing to arrange the mortgage debt; and also says, that he did not believe Haile's statement in relation to it, as he supposed the statement was made to induce him to decline the purchase. The notice thus communicated to him by Haile, the mortgagor, is certainly all the notice required by the statute. It was not a mere floating rumor, circulated by irresponsible persons, and which the party might, perhaps, have disregarded, but was the direct and positive statement of the vendor himself, who, of all persons, must have known the truth of the statement he thus made, and whose duty it was both to Cooper and Watt, Burke & Co., to make the statement and give the notice, as was done by him. The fact that Cooper did not believe it, can make no difference. The notice to Cooper was, therefore, sufficient. There is no proof that notice of this mortgage was given to Johnston ; and it is said, however, that as he took the deed to secure himself, as indorser, he was in law and fact the purchaser of the land; and that notice to Cooper was not notice to him. On this

point, by reference to an agreement made between Johnston and Cooper on the day of sale, it will be seen, that Johnston, after reciting the fact that he had become the indorser of Cooper on certain promissory notes given by Cooper to Haile, states that they " were given by Cooper as the consideration for a certain tract of land, containing 1075 acres, purchased by said Cooper from William Haile and wife, which land Haile and wife had, by consent of Cooper, conveyed to Johnston, as his security and indemnity for becoming indorser as aforesaid." This recital, and all the circumstances, negative the idea of an actual sale of the land, in the popular meaning of that term, by Haile to Johnston. The contract of sale was made with Cooper, and for his benefit. It is true the conveyance was made by his consent to Johnston, to indemnify him as the accommodation indorser of Cooper; and it is insisted for Johnston, that as he took the title in his own name to secure or indemnify himself against a liability which he had thus incurred for Cooper, that he was, in equity, a *bonâ fide* purchaser, for a valuable consideration, without notice of the mortgage to Watt, Burke & Co., and should, therefore, be protected in a court of equity against that mortgage; and that, being such a purchaser, notice to Cooper of the deed cannot affect his rights. We admit the rule to be, as contended for by counsel, that where a person, about becoming the surety of another for the purchase of lands, stipulates at the time that the vendor shall convey the land directly to him, in order to secure or indemnify himself against liability as surety, he may defend the title thus acquired as a *bonâ fide* purchaser for a valuable consideration; and that notice of the prior deed or incumbrance, given to the actual vendee, will not affect his right. This brings us to the consideration of the question, What is a *bonâ fide* purchaser for valuable consideration without notice? In England, and so far as we are advised in relation to the decisions in the United States, it has been uniformly holden, that " *bonâ fide* purchasers for a valuable consideration without notice," are those who are the purchasers of the legal estate or title; and that a purchaser of a mere equitable estate is not embraced in the definition. 2

20 *

Johns. Ch. R. 608; Fonb. Eq. b. 1, ch. 4, § 25, note (e), 320; 1 Story's Eq. 75, § 57; 2 Sug. on Vend. 352, ch. 18.

But where the legal estate is outstanding, equitable rights or incumbrances must be upheld or discharged, according to their priority in time. Fonb. Eq. b. 1, ch. 4, § 25, note (e), 320.

Chancellor Kent lays down the rule distinctly in the following language : " If there be several equitable interests affecting the same estate, they will, if the equities are otherwise equal, attach upon it, according to the periods' at which they commenced; for it is a maxim of equity as well as of law, that *qui prior est tempore potior est jure.*" 2 Johns. Ch. R. 608.

Judge Story states the rule to be, that "where the title of each party is purely equitable, and the equities in other respects are equal, precedency in time will, under such circumstances, give the advantage or priority in right." 1 Story's Eq. 76, § 58. And in the case of *Beckett* v. *Cordley et al.*, 1 Brown's Ch. R. 353, which was a controversy between two equitable incumbrancers or claimants, the legal title being in a third party, Lord Thurlow said the party " prior in time, must be prior in equity ;" that as the mortgagee knew the " mortgagor had not the legal estate, he trusted to his honor," and the holder of the junior incumbrance was postponed in favor of the prior. Tested by these principles, how does the right of Johnston stand in relation to Watt, Burke & Co.? As we have before decided, the mortgage from Haile to Thorn was valid; and Johnston in law had notice of that mortgage, and was bound by it. The legal title to the land was then in Thorn or his heirs; and being thus situated, the title acquired by Johnston by the deed from Haile to him as a security for his indorsement, was only an equitable title or estate. The title of Watt, Burke & Co. by the mortgage of Haile to them, was an estate of the same kind. Neither Johnston nor Watt, Burke & Co., by the deeds of Haile to them, obtained the legal title; each only acquired an equitable title or interest in the land, and that being the case, the question arises, Whose equity shall prevail ? Neither having the legal title, each being perfectly innocent, and no fraud imputable to either, which of the two shall be postponed ? According to the view we take of the statute, when the words " pur-

·Wailes *v.* Cooper et al.

chasers for valuable consideration without notice," are used in it, the legislature intended to designate that class of persons who had been declared to be such by the judicial tribunals, and they were purchasers of the legal estate.

Under this view of the law, we are compelled to declare, that the mortgage of Watt, Burke & Co. must prevail against the title or right acquired by Johnston; because, as neither of them has the legal title, their respective rights must be governed, in the language of the Supreme Court of the United States, in the case of *Fitzsimmons* v. *Ogden*, 7 Cranch, 18, "by the well known principle which governs a court of chancery, that between merely equitable claimants, each having equal equity with the other, he who hath the precedency in time, has the advantage in right."

This brings us to the consideration of the second question, to wit, the right of Cooper and Johnston to set up a failure of consideration, to the extent of the mortgages, in favor of Thorn and Watt, Burke & Co., against the judgment in favor of Smith's executor.

The facts established in the case clearly show, that Peter Smith in his lifetime became the owner of the two notes made by Cooper for valuable consideration in the due course of trade, before their maturity, and without any notice of any want of consideration, failure of consideration, or other equity, which might exist on the part of Cooper and Johnston against a recovery of the same. By the rules of the common law, and of the law merchant, Smith certainly could recover upon the notes, regardless of any equity in favor of the maker. It is said, however, that by the provisions of our statute on the subject of assigning choses in action, Cooper and Johnston have a right, as against the executor of Peter Smith, to insist upon the failure of consideration. It must be remembered, that Smith is a *bonâ fide* holder of the note for valuable consideration, and that he received it without notice of any want or failure of consideration. A judgment has likewise been rendered upon the note against the maker and indorsers.

On the established facts in this case, the record presents two questions for our consideration. First. If Haile, the original

vendor, had sued Cooper and Johnston, and obtained a judgment on the note against them, would a court of equity have relieved them from the judgment? Second. If it would have given them relief against a judgment obtained by Haile, will the same rule be applied to the judgment in favor of Smith's executor?

Upon examining the various decisions made by this court, in relation to the relief which a vendee of lands is entitled to receive, on account of a failure or defect of title, we find the following rules very clearly and explicitly established:

First. Where a contract for the sale of real estate has been executed, and the vendee has received a deed with covenants of warranty, and taken possession of the land, he cannot, in a case free from fraud or misrepresentation, avoid a judgment for the purchase-money, either at law or in equity, on account of a defect or failure of title, unless he has been evicted.

Second. If there has been fraud or misrepresentation in relation to the validity of the title, or the absence of incumbrance on it, a court of law or equity, if the title be defective or incumbered, will relieve from payment of the purchase-money, without eviction, notwithstanding the party may have received a deed with covenants of general warranty, and gone into possession of the land.

Third. Where the vendee, at the time of his purchase, knew of the defects of title, or the existence of incumbrances on the estate, and took a deed with covenants of warranty, he cannot at law avoid a recovery, even after eviction, but must rely upon the covenants. Nor will a court of chancery in such a case, as a general rule, grant any relief; but will remit the party to his covenants, such being the remedy provided for himself.

We conceive such to be the general rules established by this court in relation to the vendee's right to relief from payment of the purchase-money in executed contracts for land. Where there has been failure of title or breach of covenants of warranty, it will be seen, from the facts of this case, that at law in a suit brought by Haile himself on the notes, Johnston and Cooper could not have made a successful defence, because they are in possession of the land, have a deed with covenants

Wailes *v.* Cooper et al.

of warranty, and knew of the existence of the mortgage to Thorn. But this record presents another feature, which would, in our opinion, entitle them to relief in a court of equity, if the judgment in this case had been rendered in favor of Haile, the vendor. That feature is the admitted insolvency of Haile's estate. This, at law, would not be sufficient to prevent a recovery on the facts presented by this record, but we have no doubt that it constitutes ample ground for relief in equity. By reason of the insolvency of Haile, the remedy upon the covenants has become entirely worthless, and of no value; and it would be iniquitous under such circumstances, to permit an insolvent vendor to recover the purchase-money for land sold with a defective and incumbered title, whether the purchaser has been evicted or not, or knew at the time of his purchase of the existing defects and incumbrances. We have no hesitancy, therefore, in saying that a court of equity would have relieved Cooper and Johnston from a judgment rendered in favor of Haile or his representatives, to the extent of the incumbrances on the land.

A different question, however, is presented in the controversy between them and the executor of Peter Smith. It will be remembered that Smith became the *bonâ fide* holder of the note, in the usual course of trade, for full value, before its maturity, and in entire ignorance that Cooper and Johnston had any title to relief against its payment in law or equity. Under such circumstances, what is the rule in equity in relation to the conflicting rights of these parties? When Cooper and Johnston bought, they knew that the land was incumbered; they took a deed to protect themselves against those incumbrances; they went into possession under that deed, and have not been evicted. On this state of facts, a judgment at law would have been rendered against them on the note, even at the suit of Haile; but, as before stated, equity would have relieved against that judgment on account of his insolvency. But the attitude occupied by the executor of Smith is very different from that which Haile would occupy. A judgment at law has been rendered against Johnston and Cooper, and on the facts of this case they could not have defended successfully at law. The executor of

Smith, therefore, has the legal advantage; and, as Smith was a *bonâ fide* holder for valuable consideration without notice, he has an equity of equal dignity, to say the least of it, to recover the money, with that of Cooper and Johnston, to be relieved from its payment; and in such a case, the rule in chancery is invariable and inflexible. Where two parties present a case in which the equity is equal, the legal right will always prevail. We are, therefore, clearly of opinion that Cooper and Johnston have not a claim in equity to be relieved of the judgment against them in favor of Smith's executor. This case may seem hard upon them; but a different rule would be equally hard upon the other parties. Some one must lose in this case; and we have no discretion but to let the loss fall where it is cast by law. The decree of the chancellor must, therefore, be reversed, and the cause remanded, with directions to dismiss the bill, and dissolve the injunction of Cooper and Johnston, with leave to the executor of Smith to proceed at law to recover his judgment against them; and also with directions to decree a foreclosure of the mortgages in favor of Thorn, and Watt, Burke & Co., giving priority of payment of the proceeds to the mortgage in favor of Thorn.

Decree reversed, and cause remanded.

SMITH, C. J., gave no opinion, being interested in the judgment.

A petition for a re-argument was filed by the counsel for appellees, but was refused by the court.